Susan Marks (#032087)
Susan Marks & Advocates, PLLC
3260 N. Hayden Road, Suite 210
Scottsdale, AZ  85251
480-459-2403
480-567-0226 (facsimile)
susan@susanmarks-advocates.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Katherine Stewart,** for herself and as next friend of J.S., a minor<br><br>Plaintiff,<br><br>vs.<br><br>**Quality Interactive, L.L.C.**<br><br>Defendant | Case No.:<br><br>**ORIGINAL COMPLAINT** |

Plaintiffs respectfully file this Original Complaint as follows:

## INTRODUCTION

Defendant Quality Interactive, L.L.C., is a school and place of public accommodation. Quality Interactive violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*, by illegally discriminating against and refusing to admit Plaintiff

Katherine Stewart's minor son, J.S., into kindergarten on account of his disability, and refusing to accommodate J.S. by allowing him to attend kindergarten with a one-on-one aide. Plaintiff was also discriminated against by association through her son J.S.. Plaintiff seeks declaratory and injunctive relief to prevent Quality Interactive from continuing its intentional illegal discriminatory actions, and damages to remedy for denying J.S. the full and equal enjoyment of the benefits of and participation in Defendant's kindergarten program.

## JURISDICTION AND VENUE

1. 28 U.S.C. § 1331 confers jurisdiction to this Court. This action is authorized pursuant to Title III of the ADA, U.S.C. § 12180, *et seq*. This court has supplemental jurisdiction to hear Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), because the state law claims arise for a common nucleus of operative facts and are so related to the Plaintiff's federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

2. Venue is proper in the District Court of Arizona pursuant to 28 U.S.C. 1391, as all conduct giving rise to Plaintiff's claims arise in the District, and the Defendants' business is located in the District.

## PARTIES

### Plaintiff

3. Plaintiff Katherine Stewart is parent of J.S., a minor, born in 2013. Plaintiff Stewart and J.S. reside in Cave Creek, Arizona.

2

4. J.S. is a six-year-old child diagnosed with Autism, which is a disability defined by 28 C.F.R. § 36.105 and A.R.S. § 42-1492. This diagnosis makes J.S. a "qualified individual with a disability", as that term is defined under Title III of the ADA, 42 U.S.C. § 12131(2) and the AzDA.

<u>Defendant</u>

5. Defendant Quality Interactive, L.L.C. ("QI"), is a registered Arizona company that operates a Montessori school program at 33212 N 56th St. in Cave Creek, Arizona.

6. QI is a "private entity," providing "public accommodations," as those terms are defined under Title III of the ADA and the AzDA.

**FACTS**

7. J.S. was diagnosed at age three with Autism Spectrum Disorder (ASD or Autism). Autism is a neurobehavioral disorder characterized by impairments in social interaction, language and communication, and restrictive repetitive behaviors. ASD ranges in severity of symptoms. Some individuals with ASD exhibit cognitive impairments, while others do not, and the language abilities can range from highly verbal to nonverbal.

8. J.S. is verbal and has mild-moderate cognitive impairments. He does not exhibit behavioral challenges that differ significantly from other children of kindergarten age.

3

9. The only criteria for enrollment in kindergarten in Arizona is that a child must be 5 years old by the start of the kindergarten academic year.

10. In August 2018, Plaintiff sought a Montessori school option where J.S. would be educated with appropriate peer models in order to learn social and language skills within a class that offered a small adult to student ratio, which is a feature described on QI's website.

11. Defendant QI's educational model follows the Montessori method, which, as stated on their website is different from a traditional classroom: "In a Montessori classroom, a child progresses at his/her own rate; there are no pressures to 'catch up' or 'slow down' to the level of the class. The child working at his/her own rate develops good work habits….The emphasis is on making each child feel competent on his or her own." *See* https://www.qimontessori.com/kindergarten-education/.

12. J.S. was of kindergarten age by the start of the school year and was eligible at that time to enroll in kindergarten in public school.

13. Plaintiff chose to enroll J.S. into Defendant QI's preschool Montessori program (instead of kindergarten) in order to allow J.S. opportunities to benefit from the socialization and individualized learning environment of QI's Montessori program before starting kindergarten. J.S. began attending QI's preschool program on August 10, 2018.

14. J.S. attended QI's preschool Montessori program on a half-day basis for the 2018-2019 school year.

15. During the parent conference in October 2018 when Plaintiff was told how well J.S. was doing, Plaintiff requested that J.S. be able to attend QI's preschool Montessori program for full days, which was an option available to other, non-disabled students.

16. QI never provided J.S. with the option to attend preschool for full days because of J.S.'s disability. The QI preschool teacher informed Plaintiff that due to the nature of J.S.'s disabilities, he would require more individual attention than they could provide.

17. J.S. thrived in the QI Montessori preschool program, and his social, language and academic skills increased during the school year. J.S. was excited to attend school at QI.

18. QI had no additional, published criteria for enrollment in its kindergarten, rather it is a Montessori program where children are allowed to progress at their own rate.

19. In January 2019, Plaintiff completed the enrollment packet for J.S. to attend QI's kindergarten program for the 2019-2020 school year.

20. Nothing in the QI enrollment packet indicated that children starting kindergarten had to meet any criteria to enroll.

21. In February 2019, QI requested a meeting with Plaintiff to discuss whether J.S. could be promoted to kindergarten. On information and belief, QI does not require such a meeting of every parent, especially when the child has no disability.

22. On March 22, 2019, Defendant and Plaintiff met, represented by respective counsel, to review whether J.S. would be accepted into QI's kindergarten program.

5

23. During that meeting, Plaintiff requested reasonable modifications and accommodations because J.S. had blossomed while attending the QI preschool program and Plaintiff wanted J.S. to continue in QI's Montessori program.

24. Among the accommodations Plaintiff requested for kindergarten enrollment was that QI allow J.S. to have his Applied Behavioral Analysis ("ABA") therapist provide one-on-one support to J.S. ABA therapists are critical for autistic children's learning, because they help autistic children understand and access the lessons in school. The ABA therapist would assist J.S. to understand what was expected of him.

25. This ABA therapist would be funded through Plaintiff's private health insurance (school-based ABA services are available under many insurance plans in Arizona). QI would face no additional costs for the ABA therapist assigned to J.S.

26. In an April 5, 2019 letter, Defendant QI denied J.S. enrollment into its kindergarten program.

27. For the first time, QI claimed that it had academic and behavioral criteria for admission to kindergarten, and QI claimed that J.S. failed to meet skills listed in QI's Kindergarten Readiness Evaluation.

28. The Kindergarten Readiness Evaluation is a checklist that a QI teacher fills out when directed by administration, and is based on the teacher's informal observations of a child.

29. On information and belief, QI does not evaluate all children who enroll in its kindergarten program or require all children enrolled to meet all the criteria on the checklist in order to enroll in kindergarten at QI.

30. Findings in QI's Kindergarten Readiness Evaluation with regard to J.S. were false. For example, QI falsely claimed that J.S. was not eligible for QI's kindergarten because he was non-verbal, when in fact J.S. can respond verbally and is capable of coherent speech.

31. QI used its QI's Kindergarten Readiness Evaluation as a mechanism to illegally discriminate against J.S..

32. In the April 5, 2019 letter, QI also refused the accommodations that Plaintiff had requested, claiming that allowing Plaintiff to provide an ABA therapist would result in a fundamental alteration of the kindergarten program and create an undue burden.

33. In fact, the ABA therapist would not fundamentally alter or burden QI's program. QI made this claim in order to present a pretext for discrimination towards J.S., a child with Autism.

34. Due to J.S.'s disability, he requires some modifications in the way instruction is provided to him. The provision of school-based ABA services is a common support for children with Autism. Therefore, QI's refusal to allow this support, which is often necessary, effectively denies many children with Autism the benefits of QI's educational services.

35. QI refused to consider any other modification or reasonable accommodation of J.S.'s disability that would allow him to participate in its program.

## FIRST CAUSE OF ACTION

## Americans With Disabilities Act, Title III

36. Plaintiff re-alleges paragraphs one through thirty-five as if fully restated here.

37. J.S. is an individual with a disability as defined in 28 C.F.R. § 36.105.

38. Because QI is a public accommodation, QI is required to "make reasonable modifications to policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities is also discriminatory unless the modifications would constitute a fundamental alteration." 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302.

39. The ADA further provides that the term "discriminate" includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." *Id*.

40. QI discriminated against J.S. by refusing him admission to kindergarten on account of his disability.

41. QI discriminated against J.S. by failing to provide him with reasonable accommodations as is required under Title III of the ADA.

42. This failure has resulted in a denial of J.S.'s access to the benefits of QI's goods and services.

43. As a result of Defendant QI's actions, Plaintiff and J.S. have suffered consequential damages including emotional harm and distress. J.S., as a child with Autism, experiences challenges with change and has expressed sadness to his parents that he wants to go to the QI school. Children like J.S. need consistency and familiarity. Plaintiff has had to find another appropriate school for J.S. and also provide emotional support to J.S. for his emotional distress with changing schools.

## SECOND CAUSE OF ACTION

## Arizonans With Disabilities Act

44. Plaintiffs re-allege paragraphs one through thirty-five as if fully restated here.

45. J.S. is an individual with disability, as defined in A.R.S. § 41-1492.6: "'Disability' means, with respect to an individual, any of the following: (a) A physical or mental impairment that substantially limits one or more of the major life activities of the individual. (b) A record of such an impairment. (c) Being regarded as having such an impairment."

46. Defendant QI's school is a "public accommodation" as defined in A.R.S. § 41-1492.11(k).

47. QI discriminated against J.S. as defined in § 41-1492.02(G)(2) because of QI's failure "to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations."

48. QI discriminated against J.S. by refusing him admission to kindergarten on account of his disability.

49. As a result of Defendant QI's actions, Plaintiff and J.S. have suffered consequential damages including emotional harm and distress. J.S., as a child with Autism, experiences challenges with change and has expressed sadness to his parents that he wants to go to the QI school. Children like J.S. need consistency and familiarity. Plaintiff has had to find another appropriate school for J.S. and also provide emotional support for his emotional distress with changing schools.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Issue an order for declaratory relief, declaring that Defendant QI's conduct in failing to admit J.S. to kindergarten and refusing to provide reasonable modifications are unlawful and in violation of Title III of the ADA and the Arizonans with Disabilities Act;

B.  Issue an order enjoining Defendant QI from discriminating against J.S. by excluding him from QI's kindergarten program and refusing the requested accommodation of a private ABA therapist to support J.S. to access the learning opportunities provided at the QI school.

C.  Issue an order enjoining Defendant QI from discriminating against students in enrolling them in school on the basis of disability, and require QI to provide written procedures on how students' parents may request accommodations for any child who has a disability.

D.  Award pecuniary and non-pecuniary damages to Plaintiffs;

E.  Find that Plaintiffs are prevailing parties pursuant to Title III of the ADA and the AzDA, and grant Plaintiff's attorney fees, costs, expenses, and such other relief, at law or in equity, to which Plaintiff may be entitled. 42 U.S.C. §12205; 28 C.F.R. §36.505.

Respectfully submitted.

_____
Susan Marks
Attorney for Plaintiffs

DATED: May 15, 2019

*s/Susan Marks*
Susan Marks